Scott Edelsberg (SBN 330090)
**EDELSBERG LAW PA**
1925 Century Park East, Suite 1700
Los Angeles, CA 90067
Tel: 305-975-3320
Email: scott@edelsberglaw.com

Jeffrey D. Kaliel (SBN 238293)
*jkaliel@kalielpllc.com*
**KALIELGOLD PLLC**
1100 15th Street., NW, 4th Floor
Washington, D.C. 20005
Tel: (202) 350-4783

Sophia Goren Gold (SBN 307971)
*sgold@kalielgold.com*
**KALIELGOLD PLLC**
950 Gilman Avenue, Suite 200
Berkeley, California 94710
Tel: (202) 350-4783

*Attorneys for Plaintiff and the Proposed Class*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THOMAS REMODELING, on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE SHERWIN-WILLIAMS COMPANY,<br><br>Defendant. | Case No. 8:22-cv-02061-JVS-ADS<br><br>**AMENDED CLASS ACTION COMPLAINT**<br><br>**[DEMAND FOR JURY TRIAL]** |

Plaintiff THOMAS REMODELING, on behalf of itself and all others similarly situated, complains and alleges upon information and belief based, among other things, upon the investigation made by Plaintiff and through its attorneys as follows:

## NATURE OF ACTION

1. This is a proposed class action seeking monetary damages, restitution, and injunctive and declaratory relief from Defendant The Sherwin-Williams Company ("Sherwin-Williams" or "Defendant"), arising from its deceptive bait-and-switch scheme of covertly adding a so-called 4% "Supply Chain Surcharge" on sales receipts after purchases are consummated.

2. Throughout its stores, and like all retailers, Sherwin-Williams provides prominent price displays for each of its products. Reasonable consumers like Plaintiff understand those are the true and complete prices for the products, exclusive of government-imposed taxes and discounts that a customer might be eligible for.

3. But Sherwin-Williams' in-store displays are not the true prices for those products. In fact, the true prices are 4% higher than listed. That is because after consumers select in-store items based on listed prices and customize those in-store items with colors and other specifications, and after the purchase process is substantially complete, Defendant surreptitiously imposes a so-called "Supply Chain Charge" as a line item on receipts, amounting to an additional 4% added to the in-store prices on all purchases. This late addition of a so-called "Supply Chain Charge" substantially changes the in-store prices upon which Plaintiff and other purchasers rely while shopping.

4. Worse, the so-called "Supply Chain Charge" is never reasonably disclosed to consumers until it shows up as a line item on their receipts—*after the purchase is complete.*

5. Moreover, the "Supply Chain Charge" is itself a misnomer and a deception. Defendant knows full well that average consumers do not understand the meaning of the term "supply chain" nor the indirect effect that economists understand it has on prices. Reasonable consumers are not economists.

6. Sherwin-Williams intentionally chose a technical-sounding term in order to falsely convey to consumers that it was passing through an out-of-pocket cost it paid. That was false. Sherwin-Williams did not pay the "supply chain" an additional 4%. Rather, the charge disguises a simple truth: Sherwin-Williams wanted to raise prices on all of its products, uniformly.

7. Of course, Sherwin-Williams is free to raise prices as much as it chooses and for whatever reason it chooses. However, raising prices under the guise of a "Supply Chain Charge" was false and deceptive: here, the company raised prices without actually changing its listed prices in store, in order to make its products appear less expensive than they actually were.

8. Defendant's triple-edged deception—first, touting in-store prices that are false; second, misdescribing its in-store price inflation as a "Supply Chain Charge"; and third, never reasonably disclosing the "Supply Chain Charge" until after a purchase is complete (and only then, only a small line item on a receipt)—gives it an unfair advantage over honest sellers in the marketplace. The triple-edged deception makes it impossible for consumers to comparison shop meaningfully and hinders the operation of a free and fair marketplace.

9. Plaintiff seeks damages and, among other remedies, injunctive relief that fairly allows customers to decide whether they will pay Sherwin-Williams' "Supply Chain Charge."

**PARTIES**

10. Plaintiff Thomas Remodeling is incorporated in California and maintains its principal business offices in Yucaipa, California.

11. Defendant Sherwin-Williams is incorporated in Ohio and maintains its principal business offices in Cleveland, Ohio.

**JURISDICTION AND VENUE**

12. This Court has jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) because (i) there is minimal diversity; (ii) Defendant is not a governmental entity against whom the District Court may be foreclosed from ordering relief; (iii) there are more than one hundred (100) people in the putative classes; and (iv) the amount in controversy exceeds $5,000,000, exclusive of interest and costs.

13. Venue is proper pursuant to 28 U.S.C. § 1391(b) because: (1) Defendant transacts business within this judicial district; (2) a substantial part of the events giving rise to Plaintiff's causes of action against Defendant arise in this judicial district; and (3) Defendant's contacts with this District are sufficient to subject them to personal jurisdiction within this judicial district for Plaintiff's causes of action.

**COMMON FACTUAL ALLEGATIONS**

**A. Sherwin-Williams Omits and Conceals Material Facts About the Total Cost of Purchases by Deceptively Tacking on a "Supply Chain Charge" to All Items**

14. On September 28, 2021, Sherwin-Williams' Chairman, President, and Chief Executive Officer, John G. Morikis, made a public statement to its investors that manufacturing costs were rising due to the limited availability of raw materials.[1]

15. In other words, paint and other items were becoming more expensive to manufacture and produce—their price was increasing.

16. Instead of raising the advertised prices of its individual items for sale, Defendant began tacking on a 4% "Supply Chain Charge" to all items purchased by customers at each of their Sherwin-Williams stores across the country.

17. By furtively adding a hidden "Supply Chain Charge" onto each item offered for sale in its stores, Sherwin-Williams unfairly obscured the true price of each item.

18. Reasonable consumers like Plaintiff understand the advertised prices are the <u>true and complete prices for the products</u>, exclusive of government-imposed taxes and discounts that a customer may be eligible for.

19. As the Los Angeles times reported, "'Hidden surcharges undermine consumers' ability to shop around for the best value for their money,' said Jenn Engstrom, state director for the California Public Interest Research Group."

20. Sherwin-Williams' scheme prevented consumers from effectively comparison shopping.

21. Indeed, at its stores, Sherwin Williams prominently advertises the price of all of its products on its shelves and in other displays.

22. These price representations are important: as Sherwin-Williams knows, price is extremely important to consumers in choosing whether to buy a product or take their business elsewhere.

---

[1] *Despite Strong Demand, Sherwin-Williams Lowers Third Quarter and Full Year 2021 Sales and Earnings Expectations Amid Escalating Raw Material Availability Challenges and Inflation Headwinds; Announces Agreement to Expand Internal Resin Manufacturing Capabilities,* Sherwin-Williams, September 28, 2021, available at https://investors.sherwin-williams.com/press-releases/press-release-details/2021/Despite-Strong-Demand-Sherwin-Williams-Lowers-Third-Quarter-and-Full-Year-2021-Sales-and-Earnings-Expectations-Amid-Escalating-Raw-Material-Availability-Challenges-and-Inflation-Headwinds/default.aspx, last accessed March 4, 2022.

23. For consumers shopping for paint specifically, a selection is made and the paint can then be customized by color or other characteristics.

24. At checkout, the products are then scanned and totaled at the register. The scanned price matches the price displayed on the shelves. Tax is added, any coupons are deducted, and a total price is then displayed to customers. The customer pays. A receipt is provided.

25. Unbeknownst to consumers, however, Sherwin-Williams quietly adds a 4% "Supply Chain Charge" at the register, at the same time it adds tax.

26. The "Supply Chain Charge" is never reasonably disclosed to consumers until it shows up as a line item on their receipts—after the purchase is complete. This process fails to provide an adequate advance warning to customers that a "Supply Chain Charge" will be imposed on their purchases.

**B.  The Name of the "Supply Chain Charge" is Deceptive**

27. Moreover, the "Supply Chain Charge" is itself a misnomer and a deception. Defendant knows full well that average consumers do not understand the meaning of the term "supply chain" nor the indirect effect that economists understand it has on prices. Reasonable consumers are not economists.

28. Sherwin-Williams intentionally chose a technical-sounding term in order to falsely convey to consumers that it was passing through an out of pocket cost it paid. That was false. Sherwin-Williams did not pay the "supply chain" an additional 4%. Rather, the charge disguises a simple truth: Sherwin-Williams wanted to raise prices on all its products, uniformly.

29. In fact, the "Supply Chain Charge" should simply have been labelled truthfully: "Price Increase Surcharge."

**C.  Numerous Consumer Complaints Confirm the Deception**

30. Numerous customers report being surprised by the "Supply Chain Charge." As the Los Angeles Times has reported,

> Hugo Granadino recently stopped by the Sherwin-Williams paint store in Inglewood to pick up some rollers and brushes. He's repainting the den of his South Los Angeles home. After the purchase, Granadino, 40, took a look at his receipt and was surprised to see a 4% "supply chain charge." There'd been no advance warning that a surcharge was being imposed — it was just quietly tacked on at the checkout counter.

https://www.latimes.com/business/story/2021-10-14/column-pandemic-paint-surcharge

4
AMENDED CLASS ACTION COMPLAINT

31. Likewise, an Arkansas news periodical reported the same issue:

> Camilla Kinslow bought paint from the Sherwin Williams in Russellville. After she left, she noticed an additional charge on her receipt: a 4% supply chain surcharge. "I was kind of frustrated, because I was like, "How can they do this? How can people just do that," said Kinslow.

https://www.thv11.com/article/news/local/customers-see-surcharges-supply-chain-impacts-businesses/91-5bc77cba-e302-4442-9a8f-f47a2448114b

32. Similarly in Houston, the media has reported the same surprise by consumers:

> Construction company owner Brennan Dougherty said he only noticed the extra cost when he looked at his receipt after buying paint. "Wow, they're just flat out, busting it out on the receipt, 4%," said Dougherty. "Obviously if it was a bigger job it affects you a lot more. But 4% on a million dollar job is $40,000."

https://abc13.com/supply-chain-surcharge-sherwin-williams-and-demand-costs/11229601/

33. Numerous other complaints from online forums confirm consumers feel misled by the imposition of the "Supply Chain Charge." Such as this deceived consumer on Yelp:

> Rip off! They charged me an additional 4% [without] telling me (supply chain charge) I wouldn't mine [sic] paying extra if they didn't hid[e] it.

https://www.yelp.com/biz/sherwin-williams-paint-store-asheville-2?adjust_creative=mapquest&hrid=Rf4HBez5gd822SoS2jWYg&utm_campaign=yelp_feed&utm_medium=feed_v2&utm_source=mapquest (last accessed June 20, 2022).

34. Also, consider this consumer complaint to the Better Business Bureau:

> Sherwin Williams sneakily charged me a supply chain charge of 4 percent on each of my purchases. They did not inform me of this charge at the register nor did they have any signs up detailing the charge. They would not allow me to return the "premixed" paint. This is underhanded and wrong not to inform the customer of this charge and allow me to make a decision to void the purchase.

https://www.bbb.org/us/oh/cleveland/profile/producers/the-sherwin-williams-company-0312-6651/complaints (last accessed June 20, 2022).

35. Consumers have also flocked to Twitter to express their concerns over the sneakily tacked-on surcharge:

> @SherwinWilliams why not be upfront about it? Just raise the base cost of the paint by 4%. If you try to sneak it onto the customer's bill without them knowing, they won't trust your product!

https://twitter.com/p_piotti/status/1449136968936267778?s=20&t=XWxnQ2m6WsHRwO5xzy_dKw (last accessed June 20, 2022).

36. As another consumer on Twitter aptly describes the deception,

It's *how* they're passing along higher costs that's at issue. Raising the list price is fairer to consumers. Tacking on a sneaky fee is not

https://twitter.com/Davidlaz/status/1449101569295716352?s=20&t=XWxnQ2m6WsHRwO5xzy_dKw (last accessed June 20, 2022).

### D. Plaintiff's Experience

37. On or about, October 2021, Chris Thomas, as owner of Plaintiff Thomas Remodeling, made a purchase at a Sherwin-Williams store located in San Bernardino, California.

38. Relying upon price tags and displays provided in-store, Plaintiff purchased paint and paint related supplies.

39. Without its knowledge, Plaintiff was assessed a 4% "Supply Chain Charge" for each item.

40. At no time prior to its purchase did Plaintiff view any sign or disclosure informing it that the 4% "Supply Chain Charge" would be added to its purchase.

41. Accordingly, at no time prior to its purchase did Plaintiff realize that Sherwin-Williams would furtively affix a price increase on the transaction.

42. It was not until Plaintiff examined the purchase receipt after it completed the transaction that it discovered a 4% "Supply Chain Charge" had been added to its purchase.

43. Had Plaintiff known that the "Supply Chain Charge" would be assessed on its purchases, it would not have purchased paint from Sherwin-Williams.

## CLASS ALLEGATIONS

44. Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings this action on behalf of itself and Classes of similarly situated persons defined as follows:

**California Class:**
All persons in California who, within the applicable statute of limitations preceding the filing of this action, made a purchase at a Sherwin-Williams store and was charged a 4% "Supply Chain Charge."

**Nationwide Class:**
All persons who, within the applicable statute of limitations preceding the filing of this action, made a purchase at a Sherwin-Williams store and was charged a 4% "Supply Chain Charge."

45. Excluded from the Classes are Defendant, any entities in which they have a controlling interest, any of their parents, subsidiaries, affiliates, officers, directors, employees, and members of such

persons' immediate families, and the presiding judge(s) in this case and their staff. Plaintiff reserves the right to expand, limit, modify, or amend this class definition, including, without limitation, the addition of one or more subclasses, in connection with its motion for class certification, or at any other time, based upon, *inter alia,* changing circumstances and/or new facts obtained during discovery.

46. **Numerosity**: At this time, Plaintiff does not know the exact size of the Classes; however, due to the nature of the trade and commerce involved, Plaintiff believes that the Class members are well into the thousands, and thus are so numerous that joinder of all members is impractical. The number and identities of Class members is administratively feasible and can be determined through appropriate discovery in the possession of the Defendant.

47. **Commonality**: There are questions of law or fact common to the Classes, including the following, without limitation:

   a. Whether during the class period, Defendant deceptively engaged in a bait-and-switch scheme with customers regarding its 4% "Supply Chain Charge" that it assessed on all purchases made in its Sherwin-Williams stores;

   b. Whether during the class period, Defendant made material omissions regarding its 4% "Supply Chain Charge";

   c. Whether during the class period, Defendant failed to sufficiently inform reasonable customers of its 4% "Supply Chain Charge";

   d. Whether Defendant's alleged misconduct misled or had the tendency to mislead customers;

   e. Whether Defendant's alleged conduct constitutes violations of the laws asserted;

   f. Whether Plaintiff and the Classes were harmed by Defendant's misrepresentations and omissions;

   g. Whether Plaintiff and the Classes have been damaged, and if so, the proper measure of damages; and

   h. Whether an injunction is necessary to prevent Defendant from continuing to deceptively assess the hidden 4% "Supply Chain Charge" on customers' purchases

at its Sherwin-Williams stores and/or to order Defendant to sufficiently disclose to customers the 4% "Supply Chain Charge" prior to making their purchases.

48. **Typicality**: Like Plaintiff, many other customers made purchases at a Sherwin-Williams store without understanding that the 4% "Supply Chain Charge" would be added to its transactions. Plaintiff's claims are typical of the claims of the Classes because Plaintiff and each Class member was injured by Defendant's false representations and omissions about the 4% "Supply Chain Charge." Plaintiff and the Classes have suffered the same or similar injury as a result of Defendant's false, deceptive, and misleading representations. Plaintiff's claims and the claims of the Classes emanate from the same legal theory, Plaintiff's claims are typical of the claims of the Classes, and, therefore, class treatment is appropriate.

49. **Adequacy of Representation**: Plaintiff is committed to pursuing this action and has retained counsel competent and experienced in prosecuting and resolving consumer class actions. Plaintiff will fairly and adequately represent the interests of the Classes and does not have any interests adverse to those of the Classes.

50. **The Proposed Classes Satisfy the Prerequisites for Injunctive Relief**. Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive and equitable relief with respect to the Classes as a whole. Plaintiff remains interested in making purchases at Sherwin-Williams stores in the future; there is no way for it to know when or if Defendant will cease deceptively misrepresenting the true cost of each purchase transaction through affixing the 4% "Supply Chain Charge."

51. Specifically, Defendant should be ordered to provide customers with sufficient disclosures about the 4% "Supply Chain Charge" *prior* to their decision to make purchases at Sherwin-Williams locations and not when it is too late for the customer to rescind their purchase.

52. Defendant's ongoing and systematic practices make declaratory relief with respect to the Classes appropriate.

53. **The Proposed Classes Satisfy the Prerequisites for Damages**. The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Classes, and a class action is the superior method for fair and efficient adjudication of the controversy.

The likelihood that individual members of the Classes will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such litigation, especially when compared to the relatively modest amount of monetary, injunctive, and equitable relief at issue for each individual Class member.

**FIRST CLAIM FOR RELIEF**
**Violation of California's Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code § 17200, *et seq.***
**(Asserted on Behalf of the California Class)**

54. Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

55. California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice." Sherwin-Williams' conduct related to deceptively representing prices on products and adding a deceptive "Supply Chain Charge" violates each of the statutes' "unfair," "unlawful," and "fraudulent" prongs.

56. The UCL imposes strict liability. Plaintiff need not prove that Sherwin-Williams intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices—but only that such practices occurred.

57. A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications, and motives of the practice against the gravity of the harm to the alleged victims.

58. A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the public.

59. A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

60. Sherwin-Williams committed unfair and fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*, by affirmatively and knowingly misrepresenting in-store that it provides products at the prices listed when, in reality, it hides price inflation through the assessment of an additional and deceptive "Supply Chain Charge."

61. Defendant's acts and practices offend an established public policy of price transparency in the marketplace, and constitute immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

62. The harm to Plaintiff and the Classes outweighs the utility of Defendant's practices. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the misleading and deceptive conduct described herein.

63. Sherwin-Williams' business practices have misled Plaintiff and the proposed Classes and will continue to mislead them in the future.

64. Plaintiff relied on Defendant's misrepresentations about the falsely advertised cost of purchasing products from Defendant.

65. By falsely marketing the true costs of products, Sherwin-Williams deceived Plaintiff and Class members into making purchases they otherwise would not make.

66. Had Plaintiff known the truth of the "Supply Chain Charge," *i.e.,* that Sherwin-Williams' "Supply Chain Charge" was in fact a scheme to secretly inflate prices, it would have purchased products from another store.

67. As a direct and proximate result of Sherwin-Williams' unfair, fraudulent, and unlawful practices, Plaintiff and Class members suffered and will continue to suffer actual damages. Defendant's fraudulent conduct is ongoing and present a continuing threat to Class members that they will be deceived into purchasing products.

68. As a result of its unfair, fraudulent, and unlawful conduct, Sherwin-Williams has been unjustly enriched and should be required to disgorge its unjust profits and make restitution to Plaintiff and Class members pursuant to Cal. Bus. & Prof. Code § 17203 and 17204.

**SECOND CLAIM FOR RELIEF**
**Breach of Contract**
**(Asserted on Behalf of the Classes)**

69. Plaintiff repeats and re-alleges the above allegations as if fully set forth herein.

70. Plaintiff and Sherwin-Williams have contracted for the sale and purchase of consumer products such as paint, as embodied by Defendant's pricing representations made at each of its stores.

71. Defendant breached the terms of its contract with customers by charging an additional 4% more for each item purchased at its Sherwin-Williams stores, over and above the contracted for listed price on each item.

72. Plaintiff and members of the Classes have performed all, or substantially all, of the obligations imposed on them under the contract.

73. Plaintiff and members of the Classes have sustained damages as a result of Defendant's breach of the contract.

**THIRD CLAIM FOR RELIEF**
**Unjust Enrichment**
**(Asserted on Behalf of the Classes)**

74. Plaintiff repeats and re-alleges the above allegations as if fully set forth herein.

75. This count is brought solely in the alternative. Plaintiff acknowledges that the breach of contract claim cannot be tried along with unjust enrichment.

76. To the detriment of Plaintiff and the Classes, Defendant has been, and continues to be, unjustly enriched as a result of its wrongful conduct alleged herein.

77. Defendant unfairly, deceptively, unjustly, and/or unlawfully seized and accepted said benefits which, under the circumstances, would be unjust to allow Defendant to retain.

78. Plaintiff and the Classes, therefore, seek disgorgement of all wrongfully obtained monies received by Defendant as a result of its inequitable conduct as more fully stated herein.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff on behalf of itself and the Classes seek judgment in an amount to be determined at trial, as follows:

(a) For an order enjoining Defendant from continuing the unlawful practices set forth above;

(b) For declaratory and injunctive relief as set forth above;

(c) For an order requiring Defendant to disgorge and make restitution of all monies it acquired by means of the unlawful practices set forth above;

(d) For compensatory damages according to proof;

(e) For punitive damages according to proof;

(f) For reasonable attorneys' fees and costs of suit;

(g) For pre-judgment interest; and

(h) Awarding such other and further relief as this Court deems just, proper and equitable.

## JURY DEMAND

Plaintiff hereby demands a jury trial on all claims so triable.

Dated: January 9, 2023

By: /s/ *Scott Edelsberg*
Scott Edelsberg, (CA Bar # 330090)
**EDELSBERG LAW, P.A.**
scott@edelsberglaw.com
1925 Century Park East, Suite 1700
Los Angeles, CA 90067
Tel: 305-975-3320

Jeffrey D. Kaliel (SBN 238293)
*jkaliel@kalielpllc.com*
**KALIELGOLD PLLC**
1100 15th Street., NW, 4th Floor
Washington, D.C. 20005
Tel: (202) 350-4783

Sophia Goren Gold (SBN 307971)
*sgold@kalielgold.com*
**KALIELGOLD PLLC**
950 Gilman Avenue, Suite 200
Berkeley, California 94710
Tel: (202) 350-4783

*Attorneys for Plaintiff*